1
2
3
4
5

6          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
7                    AT SEATTLE

| | |
|---|---|
| 8  CLARK LANDIS, ROBERT BARKER, GRADY THOMPSON, and KAYLA BROWN | No. |
| 9                    Plaintiffs, | **COMPLAINT** |
| 10  v. | **JURY OF TWELVE (12) DEMANDED** |
| 11  WASHINGTON STATE MAJOR LEAGUE BASEBALL STADIUM PUBLIC FACILITIES DISTRICT; and BASEBALL OF SEATTLE, INC., a duly licensed Washington corporation d.b.a. Mariners Baseball, LLC, a duly licensed Washington limited liability corporation d.b.a. The Baseball Club of Seattle, LLLP, a duly licensed Washington limited liability limited partnership, | |
| 16                    Defendants. | |

17

18      Plaintiffs Clark Landis, Robert Barker, Grady Thompson, and Kayla Brown, by and

19  through their attorneys Conrad Reynoldson of the Washington Civil & Disability Advocate, and

20  Stephen Connor and Anne-Marie Sargent of Connor & Sargent PLLC, hereby bring this

21  Complaint against Defendants Washington State Major League Baseball Stadium Public

22  Facilities District, and The Baseball Club of Seattle, LLLP.

23

COMPLAINT - 1

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

# I.     <u>INTRODUCTION</u>

1.1     Safeco Field (referred to herein also as "the Stadium") is a retractable roof baseball park located in downtown Seattle, Washington, the home stadium of Major League Baseball's Seattle Mariners. Safeco Field is owned and operated by Defendant Washington State Major League Baseball Stadium Public Facilities District.

1.2     Unfortunately, Defendant Washington State Major League Baseball Stadium Public Facilities District and its contractors have permitted barriers at the Stadium that have the effect of excluding patrons who use wheelchairs from many areas of the stadium, including the best seats in the house. These impediments also interfere with the enjoyment of the baseball games throughout the Stadium for persons with disabilities confining them to wheelchairs. These discriminatory policies and practices violate Title II of the Americans with Disabilities Act and Washington's Law Against Discrimination.

1.3     Likewise, Defendant The Baseball Club of Seattle, LLLP and its contractors have permitted barriers at the Stadium that have the effect of excluding patrons who use wheelchairs from many areas of the stadium, including the best seats in the house. These impediments also interfere with the enjoyment of the baseball games throughout the Stadium for persons with disabilities confining them to wheelchairs. These discriminatory policies and practices violate Title III of the Americans with Disabilities Act and Washington's Law Against Discrimination.

1.4     This litigation is brought by Plaintiffs Clark Landis, Robert Barker, Grady Thompson, and Kayla Brown, all of whom have mobility disabilities which limit them in the major life activity of walking and require them to use wheelchairs, after being denied equal access to events offered at Safeco, specifically home games of the Seattle Mariners.

COMPLAINT - 2

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

1.5     Defendants have violated Title II, Title III and Washington's Law Against Discrimination in a variety of ways, including but not limited to:

- Failing to provide sufficient wheelchair accessible and companion seating distribution;

- Failing to provide sufficient wheelchair accessible and companion seating sightlines;

- Failing to provide sufficient wheelchair accessible and companion seating dimensions and slope;

- Failing to provide low counters and/or sufficient room in concession lines in the Pen to allow non-ambulatory spectators the benefit and full enjoyment of those Stadium amenities;

- Failing to provide an elevator to Edgar's Cantina which is independently operable;

- Maintaining concourse areas throughout the Stadium which have hazardous changes in level;

- Maintaining drink rails on the 200 Level which are excessively high; and

- Failing to provide accessible routes into the bullpen and dugouts.

1.6     Plaintiffs bring this lawsuit to ensure that they and others who use wheelchairs or other mobility devices have equal and meaningful access to and enjoyment of these fantastic sporting events.

COMPLAINT - 3

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

## II.    JURISDICTION AND VENUE

2.1    This action arises under the laws of the United States and is brought pursuant to § 12132. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).

2.2    The court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to Washington's Law Against Discrimination, RCW 49.60, pursuant to 28 U.S.C. § 1367.

2.3    Venue in this court is proper pursuant to 28 U.S.C. § 1391(b)(2), as all of the events giving rise to the claims occurred in King County, Washington State.

## III.    PARTIES

3.1    Plaintiff Clark Landis is currently and at all times relevant to this suit has been a resident of Seattle, Washington. Plaintiff Landis is an individual with a disability as he is substantially limited in major life activities, including but not limited to walking, and relies on a wheelchair for mobility. Plaintiff Landis is a long-time Seattle Mariners' fan.

3.2    Plaintiff Robert Barker is currently and at all times relevant to this suit has been a resident of Edmonds, Washington. Plaintiff Barker is an individual with a disability as he is substantially limited in major life activities, including but not limited to walking. Plaintiff Barker relies on a wheelchair for mobility. Plaintiff Barker is also a long-time Mariners' fan.

3.3    Plaintiff Grady Thompson is currently and at all times relevant to this suit has been a resident of the State of Washington. Plaintiff Thompson is an individual with a disability as he is substantially limited in major life activities, including but not limited to walking.

COMPLAINT - 4

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

Plaintiff Thompson relies on a wheelchair for mobility. Plaintiff Thompson is also a long-time Mariners' fan.

3.4     Plaintiff Kayla Brown is currently and at all times relevant to this suit has been a resident of Seattle, Washington. Plaintiff Brown is an individual with a disability as she is substantially limited in major life activities, including but not limited to walking, and relies on a wheelchair for mobility. Plaintiff Brown is also a long-time Mariners' fan.

3.5     Defendant Washington State Major League Baseball Stadium Public Facilities District ("PFD") a Washington municipal corporation, developed and owns Safeco Field, home field of Major League Baseball's Seattle Mariners. The PFD leases Safeco Field to the Seattle Mariners.

3.6     The Baseball Club of Seattle, LLLP, manages operations and maintenance for the PFD for all events at Safeco.

## IV.     STATEMENT OF FACTS

### Background

4.1     Safeco Field is the home stadium of the Seattle Mariners. Upon information and belief, construction of Safeco Field began in 1997, and the Stadium was opened for its first game in 1999.

4.2     In the case of newly constructed facilities, compliance with the ADA's antidiscrimination mandate requires that facilities be "readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(1). Safeco Field is a "newly constructed" facility pursuant to 42 U.S.C. § 12183(a)(1).

COMPLAINT - 5

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

4.3     The regulations pertaining to the ADA include provisions as follows: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . ." 42 U.S.C. § 12182.

4.4     No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.130(a).

4.5     "A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability...deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service...afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others...Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others...Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service". 28 C.F.R. § 35.130(b)(1).

4.6     As defined by the ADA, unlawful "discrimination" occurs when features of an accommodation subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

COMPLAINT - 6

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

4.7     Physical construction or alterations commenced after July 26, 1992, but prior to September 15, 2010, must comply with the Uniform Federal Accessibility Standards ("UFAS") or the 1991 Standards for Accessible Design ("1991 Standards"). 28 C.F.R. § 35.151(c)(1).

4.8     Per §4.33.3 of the 1991 Standards, "Wheelchair areas shall be an integral part of any fixed seating plan and shall be provided so as to provide people with physical disabilities a choice of admission prices and lines of sight comparable to those for members of the general public."

4.9     There are five main levels to the stadium: Field (or Street), Main Concourse (100 Level – 20,835 seats), Club Level (200 Level – 4,616 seats), Suite Level (1,554 seats), and Upper Concourse (300 Level – 16,023 seats).

4.10    Two bleacher sections are located above left field and below the center field scoreboard, with 3,721 seats.

4.11    Defendants are required to provide wheelchair accessible and companion seats in certain percentages, dispersed throughout Safeco Field. Specifically, wheelchair accessible seating is required to be an integral part of the seating at Safeco Field, and Defendants are required to provide people with physical disabilities a choice of admission prices and lines of sight comparable to those for members of the general public.

4.12    Since the Stadium opened in 1999, Defendants have made it difficult for baseball fans who use wheelchairs to enjoy a game from front row or other seats near the infield.

4.13    Defendants do not provide lines of sight comparable to front rows or other areas near the infield for wheelchair users comparable to that of the general public.

COMPLAINT - 7

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

**Plaintiffs' Experiences at the Stadium**

4.14    All of the plaintiffs in this matter are lifelong Mariners fans and attend games at Safeco Field every season with friends and family. Each simply want to enjoy the baseball games of the Seattle team they love on an equal basis without having an experience that is second-class to the experience ambulatory fans enjoy. All Plaintiffs in this matter have attended a game either in the 2017-2018 season, or in the previous. All Plaintiffs have plans to return for another game once the accessibility barriers alleged in this Complaint are remediated.

4.15    Plaintiff Landis is a Seattle resident who typically attends at least five baseball games at Safeco Field each season. On multiple occasions he has had 300 Level seats and has had other fans collide with the back of his wheelchair because the wheelchair accessible seats on this level are insufficiently deep. He most recently attended a game on August 20, 2018, and sat in Section 224.

4.16    Plaintiff Barker is an Edmonds resident and most recently attended a game on May 27th, 2018 and sat in Section 112 where he felt segregated by being related to a wheelchair accessible seat in the back row with an obstructed view in the cold shade.

4.17    Plaintiff Thompson is a Puyallup resident who is currently enrolled at the University of Washington. He has a family tradition of attending at least one game a season with his parents each year. He attended a game on July 1, 2018 and sat in Section 342. When Plaintiff Thompson sits in these 300 Level seats, his concerns about the lack of depth and the possibility of fans colliding with the back of his wheelchair impede this enjoyment of the game.

4.18    Plaintiff Brown is a Seattle resident whose stepfather is a police officer who has assisted with security for the home dugout for over a decade. Due to her stepfather's position,

COMPLAINT - 8

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

Plaintiff Brown would have been able to go into the bullpen but for the step that must be traversed to enter. She most recently attended a game on May 6, 2018.

**Defendants' Seating in Section 100 Distribution Violates the ADA**

4.19    The only field level wheelchair accessible seating on the 100 Level of the stadium is currently in the Diamond Club. On information and belief prices of seats in this area of the stadium vary but can cost as much as $500. The Diamond Club seats are highly desirable. The Diamond Club seats are on the main level of the stadium, in the gentle Seattle sun when it is shining, and directly behind the main action of the baseball game.

4.20    The stadium's current arrangement in Section 100 does not satisfy the ADA's requirements. Among other things, Defendants do not provide Safeco Field patrons who use wheelchairs with a choice of admission prices and lines of sight comparable to the front rows, or other rows near the infield, of the 100 Level. Upon information and belief, there is one wheelchair accessible seat in the Diamond Club which costs $500, and it does not comply with 2010 ADA standards. The only other wheelchair accessible seats on the 100 Level are at the back of each section. On information and belief non-accessible front row seating is provided around the entire perimeter of the field and ranges in price from as low as $34 to as high as $500 in the Diamond Club. The inaccessible seats in the 100 Level are superior to the wheelchair accessible seats in the 100 Level for the following reasons, among others:

•    Being closer to the game, thus providing a better view of the action;

•    Being able to hear the on-field sounds of the games and see players' facial expressions and interactions;

•    Being able to interact with players and umpires;

COMPLAINT - 9

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

1 •    Being able to enjoy the sun on cooler days; and

2 •    Receiving baseballs from field attendants or players.

3    4.21    From many of the accessible seats on the 100 Level, one cannot see the High

4 Definition ("HD") Scoreboard. The non-accessible seating in the 100 Section does have a view

5 of the scoreboard.

6    4.22    The HD scoreboard is above the center field and, upon information and belief,

7 was installed in 2013. Upon information and belief, the Stadium's HD scoreboard is 201 feet

8 wide, over 11,000 square feet in area, the second largest screen in use by any Major League

9 Baseball team, and the twenty-fifth largest video screen in the world. The board can be used

10 either all at once (for live action or video replays) or can be split into sections for displaying

11 information such as statistics, game status, and advertisements.

12    4.23    The view of the scoreboard is either completely or mostly obstructed when seated

13 in the 100 Level accessible seats. This is a violation of Title II, which provides as follows:

14    A public entity shall take appropriate steps to ensure that communications with
       applicants, participants, members of the public, and companions with disabilities
15     are as effective as communications with others.

16 28 CFR § 35.160 (a)(1).

17    4.24    Additionally, 28 CFR § 36.303 (c)(1) provides as follows:

18

19    A public accommodation shall furnish appropriate auxiliary aids and services
       where necessary to ensure effective communication with individuals with
20     disabilities.

21 Spectators rely on the scoreboard for replays, live statistics, visual entertainment and

22 announcements between innings and more. Without the ability to stand or sit with a view of the

23
COMPLAINT - 10
                                              Conrad A. Reynoldson
                              WASHINGTON CIVIL & DISABILITY
                                                      ADVOCATE
                                         3513 NE 45th Street, Suite G
                                              Seattle, WA 98105
                                              (206) 855-3134

scoreboard, Plaintiffs and other non-ambulatory spectators are unable to track of pitches and innings during the game. Thus, there is a failure to communicate effectively when the scoreboard is hidden from view under both Title II and Title III of the ADA.

4.25    By contrast, most of the non-accessible seats on the 100 Level have a clear view of the scoreboard, and all of the front row non-accessible seats on the 100 Level have a clear view of the scoreboard.

4.26    The law requires that Plaintiffs and other non-ambulatory spectators have choices of seating locations and viewing angles that are substantially equivalent to, or better than, the choices of seating locations and viewing angles available to all other spectators.

4.27    All plaintiffs in this matter have plans to attend another game and sit in field level seats once they are provided at comparable price points and are compliant.

4.28    Plaintiffs have been damaged and will continue to be damaged by Defendants' discrimination.

**Defendants' 100 Level and 200 Level Seats Do Not Comply with
ADA Standards for Sightlines**

4.29    §4.33.3 of the 1991 Standards requires that:

Wheelchair areas shall be an integral part of any fixed seating plan and shall be provided so as to provide people with physical disabilities a choice of admission prices and lines of sight comparable to those for members of the general public.

4.30    Plaintiffs and other non-ambulatory spectators do not have adequate sightlines over standing spectators when seated in the wheelchair accessible seating on the 100 or 200 Levels. Because of their disabilities, they are unable to stand or walk, and require the use of a

COMPLAINT - 11

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

wheelchair for mobility. When spectators stand, Plaintiffs sight lines are obscured. This is most likely to occur at exciting moments of the game.

4.31     Defendants provide two platforms on the 200 Level to address this issue in some of the wheelchair accessible and companion seating, but most of the wheelchair accessible and companion seating on this level does not have a platform. By contrast, the 100 Level does not have platforms to address the issue.

4.32     All plaintiffs in this matter have plans to attend another game and sit in 100 and 200 Level wheelchair accessible seats once the sightlines are compliant.

**Defendants' 300 Level and Left Field Bleacher Seats Do Not Comply with ADA Standards**

4.33     ADA standards require a seating depth in accessible seating of forty-eight inches minimum plus thirty-six inches minimum for a minimum egress width. The depth of seating in the 300 Level and Sections 180 and 181 in left field does not comply with these ADA requirements. Pursuant to §4.33.2 of the 1991 Standards, the depth of the seating at this level and in these sections is insufficient, leaving little room behind a disabled patrons' wheelchair for fellow spectators to travel.

4.34     Plaintiff Landis cannot comfortably sit in the 300 Level or Section 180 and 181 in left field seating because his wheelchair obstructs the minimum required egress width due to noncompliant accessible seating dimensions and results in other spectators colliding with the back of his wheelchair while they ingress and egress. He has experienced this on multiple occasions when he sat in accessible seats on the 300 Level. This interferes with his enjoyment of the games as his wheelchair is bumped and moved throughout the game as spectators maneuver behind him to their seats. While this noncompliance will not deter Plaintiff Landis from

COMPLAINT - 12

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

1    attending games of his beloved Mariners, he will have an experience more comparable to the

2    experience of ambulatory spectators once these seats are made compliant.

3        4.35    Plaintiff Barker cannot sit in the 300 Level or Section 180 and 181 in left field

4    seating comfortably and without reasonable apprehension because his wheelchair obstructs the

5    cross aisle due to noncompliant accessible seating dimensions and egress width dimensions that

6    results in fans who walk by colliding with his wheelchair. He has not attempted to sit in these

7    seats for due to this reasonable apprehension but plans to do so once these seats are made

8    compliant.

9        4.36    Plaintiff Thompson cannot sit in the 300 Level or Section 180 and 181 in left field

10   seating comfortably and without reasonable apprehension because his wheelchair obstructs the

11   cross aisle due to noncompliant accessible seating dimensions and egress width dimensions that

12   results in fans who walk by colliding with his wheelchair. Whenever he sits in these seats he

13   feels cramped for space and is concerned by the possibly of collisions by spectators passing

14   behind him. While this noncompliance will not deter Plaintiff Thompson from attending games

15   of his beloved Mariners, he will have an experience more comparable to the experience of

16   ambulatory spectators once these seats are made compliant.

17       4.37    Plaintiff Brown cannot sit in the 300 Level or Section 180 and 181 in left field

18   seating comfortably and without reasonable apprehension because her wheelchair obstructs the

19   accessible route due to noncompliant accessible seating dimensions and egress width dimensions

20   as it would result in fans colliding with her wheelchair as they enter and exit their seating. She

21   has not attempted to sit in the seats for due to this reasonable apprehension but has plans to do so

22   once these seats are made compliant.

23

COMPLAINT - 13

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

1   4.38   Further at least one section of wheelchair accessible and companion seating in

2   Left Field of the 100 Level has an expansion joint running through the seats in violation of the

3   level surface requirement of §4.33.4 of the 1991 Standards. Not having a level accessible seating

4   surface means that wheelchair users have to sit at awkward angles and navigate a bump every

5   time they move, and potentially have wheels get stuck. All plaintiffs in this matter and all non-

6   ambulatory spectators require a level surface for their accessible seating in order to comfortably

7   watch the game in their wheelchairs.

8   **Defendants' Edgar's Cantina Platform Lift Does Not Comply with ADA Standards**

9   4.39   Per §410.1 of the 2010 Standards Platform Lift operation is required to be

10  automatic.

11  4.40   The Edgar's Cantina LU/LA elevator requires a key for operation and is thus not

12  "automatic".

13  4.41   Because the elevator is not automatic Plaintiffs Landis, Barker, and Brown are

14  unable to patronize Edgar's Cantina without extra assistance and hassle.

15  4.42   Once this elevator is compliant these Plaintiffs will use it to access Edgar's

16  Cantina.

17  **Defendants' Concessions in "The Pen" and 100 Level Do Not Comply with ADA Standards**

18  4.43   Per §5.2 of the 1991 Standards, "Where food or drink is served at counters

19  exceeding 34 in (865 mm) in height for consumption by customers seated on stools or standing at

20  the counter, a portion of the main counter which is 60 in (1525 mm) in length minimum shall be

21  provided…"

22

23

COMPLAINT - 14

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

4.44    Further, per §5.5 of the 1991 Standards, "Food service lines shall have a minimum clear width of 36 in (915 mm), with a preferred clear width of 42 in (1065 mm) to allow passage around a person using a wheelchair."

4.45    Upon information and belief, both fixed and portable concession counters in the Pen, such as the Jack Daniels bar and the Silver Bullet Bar, have excessive counter height.

4.46    This excessive counter height means that Plaintiffs are unable to sufficiently reach the counter to make purchases unassisted.

4.47    The food service lines for multiple concessions in the Pen such as Jack's BBQ and Dynamite Chicken.

4.48    The food service lines with insufficient minimum clear width mean that Plaintiffs are unable to navigate the lines in order to reach the counter to make purchases unassisted.

4.49    Whenever Plaintiff Landis has purchased food from the Pen he has had to ask his companions to do it for him because he is unable to access the concessions due to the above described violations. He plans on and looks forward to purchasing concessions from the Pen independently once they are made compliant.

4.50    Plaintiff Barker has not purchased concessions from the Pen because he has knowledge of the above described violations and wishes to purchase concessions independently. He has plans to purchase concessions from the Pen once it is made compliant.

4.51    Whenever Plaintiff Thompson has purchased food from the Pen he has had to ask his family to do it for him because he is unable to access the concessions due to the above described violations. He plans on and looks forward to purchasing concessions from the Pen independently once they are made compliant.

COMPLAINT - 15

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

4.52     Plaintiff Brown has not purchased concessions from the Pen because she has knowledge of the above described violations and wishes to purchase concessions independently. She has plans to purchase concessions from the Pen once it is made compliant.

**Defendants' Common Areas on the 100, 200, and 300 Levels Do Not Comply with ADA Standards**

4.53     All plaintiffs in this matter have recently encountered the violations described herein regarding the common areas on the 100 and 300 Levels. In addition, Plaintiff Landis has experienced drink rail that are too high in violation of Section 5.2 of the 1991 Standards on the 200 Level, which provide as follows:

> Where food or drink is served at counters exceeding 34 in (865 mm) in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 in (1525 mm) in length minimum shall be provided…

4.54     Upon information and belief, metal expansion joints on the 100 and 300 Levels have excessive vertical changes in level which present a hazard for wheelchair users such as Plaintiffs in this matter as well as others with mobility disabilities. Driving wheelchairs over such expansion joints can be jarring and may result in difficulty controlling the wheelchair driving and avoiding collisions with other spectators.

4.55     These vertical changes to the metal expansion joints are in violation of Section 4.5.2 of the 1991 Standards, which provide that

> Changes in level up to 1/4 in (6 mm) may be vertical and without edge treatment (see Fig. 7(c) ). Changes in level between 1/4 in and 1/2 in (6 mm and 13 mm) shall be beveled with a slope no greater than 1:2 (see Fig. 7(d) ). Changes in level greater than 1/2 in (13 mm) shall be accomplished by means of a ramp that complies with 4.7 or 4.8.

COMPLAINT - 16

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

4.56    Upon information and belief, gaps in the floor on the 100 Level have excessive vertical changes in level which present a hazard for wheelchair users such as Plaintiffs in this case as well as others with mobility disabilities.

4.57    On information and belief all of the drink rails along the windows of the 200 Level exceed height requirements and do not have any lowered segments. This prevents Plaintiff Landis from being able to watch the game from inside the 200 Level with friends and family and experience the same benefits in that area as ambulatory spectators enjoy. Further if something exciting unexpectedly occurs on the field of play, Plaintiff Landis cannot look out over the railing like everyone else, and his view would be blocked by standing spectators watching a key moment of the game.

4.58    As a public entity providing services, the PFD must provide all people with disabilities with equal access to the services the PFD and its tenants provide, including services provided at Safeco.

**Defendants' fail to provide an accessible route to the bullpen and dugouts that complies with the ADA Standards**

4.59    Plaintiff Brown is denied opportunities to participate in activities taking place in the bullpen and dugouts due to Defendants' failure to provide an accessible route that complies with the ADA standards.

4.60    In order to access the bullpen as well as the dugouts, visitors must traverse a step.

4.61    Per §4.33.3 of the 1991 ADA Standards, "an accessible route shall connect wheelchair seating locations with performing areas, including stages, arena floors, dressing rooms, locker rooms, and other spaces used by performers."

COMPLAINT - 17

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

4.62     Plaintiff Brown is unable to traverse steps in her wheelchairs due to her mobility disabilities and is thus denied access due to the lack of a compliant accessible route.

## V.     CAUSES OF ACTION

**First Cause of Action**
**Title II of the Americans with Disabilities Act of 1990**
**42 U.S.C. § 12101 *et seq.***

5.1     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

5.2     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

5.3     At all times relevant to this action, the PFD was and is a "public entity" within the meaning of Title II of the ADA and provides a pedestrian right of way program, service, or activity to the general public.

5.4     At all times relevant to this action, Plaintiffs were and are qualified individuals with disabilities within the meaning of Title II of the ADA and meet the essential eligibility requirements for the receipt of the services, programs, or activities of the PFD.  42 U.S.C. § 12131.

5.5     Defendants are mandated to operate each service, program, or activity "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities."  28 C.F.R. § 35.150; see also 28 C.F.R. § 35.149.  This requirement applies to all

COMPLAINT - 18

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

1  programs, services, and activities that a public entity offers, whether or not they are carried out in

2  facilities that have been constructed or altered since January 26, 1992.

3        5.6    The regulations implementing Title II of the ADA provide that a public entity

4  must maintain the features of all facilities required to be accessible by the ADA.  28 C.F.R. §

5  35.133.

6        5.7    Further, per 28 CFR § 35.160 (a)(1), "A public entity shall take appropriate steps

7  to ensure that communications with applicants, participants, members of the public, and

8  companions with disabilities are as effective as communications with others."

9        5.8    Plaintiffs are informed, believe, and thereon allege that Defendants commenced

10  construction on the Stadium after January 1, 1992 and that Defendants, through their

11  administrative methods, policies, and practices, has failed to make the Stadium readily accessible

12  to and usable by persons with disabilities as required under regulation standards and guidelines.

13        5.9    Plaintiffs are informed, believe, and thereon allege that since March 15, 2012,

14  Defendants have constructed, altered, or repaired parts of Safeco within the meaning of the ADA

15  regulations, and that Defendants, through their administrative methods, policies, and practices,

16  have failed to make such facilities compliant with the ADA regulations as updated in 2010, as

17  required under 28 C.F.R. § 35.151(c)(5).

18        5.10    Plaintiffs are informed, believe, and thereon allege that Defendants and their

19  agents and employees have violated and continue to violate Title II of the ADA by failing to

20  maintain the ticketing, accessible routes, concessions, viewing areas, communications, and

21  seating of the Stadium in an accessible manner.

22

23

COMPLAINT - 19

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

5.11    Plaintiffs are informed, believe, and thereon allege that Defendants and their agents and employees have violated and continue to violate Title II of the ADA by failing to timely respond to and remedy complaints regarding the lack of accessibility of its ticketing, accessible routes, concessions, viewing areas, and seating at the Stadium.

5.12    The ADA's regulations at 43 C.F.R. § 17.550(a)(3) prevent public entities from refusing to comply with their obligations to provide persons with disabilities meaningful access to their programs and services by claiming that doing so would impose an undue financial or administrative burden, unless such a determination is made by an agency head or his or her designee after consulting all agency resources available for use in the funding and operation of the conducted program or activity and the determination is accompanied by a written statement of the reasons for reaching that conclusion.  On information and belief, Defendants, through their agency heads and/or designees, have failed to make such a determination accompanied by the required written statement and has, therefore, failed to demonstrate that providing the access Plaintiffs seek to ticketing, accessible routes, concessions, viewing areas, and seating at Safeco would impose an undue financial or administrative burden. Moreover, the exception for undue financial or administrative burdens does not apply to architectural barriers.

5.13    As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered and continues to suffer difficulty, hardship, isolation, and segregation due to Defendants' failure to remediate ticketing, accessible routes, concessions, viewing areas, communication, and seating barriers.  These failures have denied and continue to deny Plaintiffs the full, equal, and meaningful access to the events hosted at Safeco that the ADA requires.

5.14    Plaintiffs have been damaged in an amount to be determined at trial.

COMPLAINT - 20

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

5.15    Because Defendants' discriminatory conduct presents a real and immediate threat of current and continuing future violations, declaratory and injunctive relief are appropriate remedies. Congress has authorized courts to issue "order[s] to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(a)(2).

5.16    Further, plaintiffs are entitled to compensatory monetary damages under Title II of the ADA if Plaintiff can prove intentional discrimination. Upon information and belief, Defendants have been aware of the ADA violations for years and have failed to remedy these violations.

5.17    Pursuant to 42 U.S.C. § 12133 and 12205, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

**Second Cause of Action**
**Title III of the Americans with Disabilities Act of 1990**
**42 U.S.C. § 12101 *et seq.***

5.18    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

5.19    Safeco field is a Stadium and is therefore a place of public accommodation as defined in 42 U.S.C. § 12181(7)(C).

5.20    Defendant Baseball Club of Seattle, LLLP leases, operates and manages Safeco in Seattle, Washington.

5.21    Defendants have discriminated against Plaintiffs on the basis of their disabilities. Defendants' discriminatory conduct includes but is not limited to:

COMPLAINT - 21

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

a.      Discriminatory exclusion from and/or denial of goods, services, facilities, privileges, advantages, accommodations, and/or opportunities;

b.      Provision of goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded non-disabled individuals;

c.      Failing to provide wheelchair seating that is sufficiently dispersed throughout Safeco Field;

d.      Failing to provide wheelchair seating that is an integral part of the fixed seating at Safeco Field;

e.      Failing to provide people with physical disabilities a choice of admission prices and lines of sight comparable to those for members of the general public;

f.      Failing to provide fully accessible concessions stands and dining areas;

g.      Failing to provide fully accessible routes;

h.      Failing to provide viewing areas with equivalent views of the field and bullpen;

i.      Failing to furnish appropriate auxiliary aids and services to ensure effective communication with individuals with disabilities;

j.      Failing to make reasonable modifications in policies, practices, and/or procedures as necessary to afford the goods, services, facilities, privileges, advantages, and/or accommodations of Safeco Field to individuals with disabilities; and

k.      Failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of Safeco Field are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

COMPLAINT - 22

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

5.22    As such, Defendants' discriminate and, in the absence of the injunction requested herein, will continue in the future to discriminate against Plaintiffs on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Safeco Field in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. and/or its implementing regulations.

5.23    Congress has authorized courts to issue "order[s] to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(a)(2).

5.24    Pursuant to 42 U.S.C. § 12188 and 12205, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees, expert expenses, and costs incurred in bringing this action.

5.25    Plaintiffs have been damaged and will continue to be damaged by this discrimination.

**Third Cause of Action**
**Washington Law Against Discrimination**
**Revised Code of Washington §§ 49.60.010-49.60.505**

5.26    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

5.27    Section 49.60.030(1) of the Revised Code of Washington provides in pertinent part:

> The right to be free from discrimination because of . . . the presence of any sensory, mental, or physical disability . . . is recognized as and declared to be a civil right.  This right shall include, but not be limited to: . . . (b) The right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement . . . .

COMPLAINT - 23

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

1    5.28    The Stadium is a "place of public resort, accommodation, assemblage, or

2    amusement" within the meaning of the Washington Law Against Discrimination, Wash. Rev.

3    Code § 49.60.040.

4    5.29    Plaintiffs are individuals with disabilities within the scope of the Washington Law

5    Against Discrimination.

6    5.30    Plaintiffs are informed, believe, and thereon allege that Defendants and their

7    agents and employees have violated and continue to violate sections 49.60.010 et seq. of the

8    Revised Code of Washington by unlawfully denying Plaintiffs full and equal access to the

9    ticketing, accessible routes, concessions, viewing areas, and seating comparable to the access

10   that it offers to others attending events at the Stadium as well as failure to effectively

11   communicate and for the reasons set forth above, including violating the ADA.

12   5.31    Furthermore, Plaintiffs are informed, believe, and thereon allege that Defendants

13   and their agents and employees have violated and continue to violate sections 49.60.010 et seq.

14   of the Revised Code of Washington by unlawfully denying Plaintiffs full and equal access to

15   other places of public resort, accommodation, assemblage, or amusement.

16   5.32    Defendants' actions constitute discrimination against persons with disabilities and

17   violate the Washington Law Against Discrimination, Revised Code of Washington § 49.60.010

18   et seq., in that persons with mobility disabilities have been and are denied full and equal

19   enjoyment of the accommodations, advantages, facilities, privileges, and services that

20   Defendants provide to individuals who do not have disabilities.

21   5.33    As a direct and proximate result of the aforementioned acts, Plaintiffs have

22   suffered and continue to suffer difficulty, hardship, isolation, and segregation due to Defendants'

23

COMPLAINT - 24

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

failure to remediate ticketing and seating at events held at the Stadium. These failures have denied Plaintiffs the full and equal enjoyment of the events held at this venue that the Washington Law Against Discrimination requires. Plaintiffs have been damaged in an amount to be determined at trial.

5.34    Pursuant to Wash. Rev. Code § 49.60.030(2), Plaintiffs are entitled to declaratory and injunctive relief and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

6.1    That this Court assume jurisdiction;

6.2    That this Court issue an order declaring the Defendants to be in violation of the Americans with Disabilities Act;

6.3    That this Court issue declaratory and injunctive relief ordering the Defendants to bring Safeco Field into compliance with, and to operate Safeco Field in compliance with, the Americans with Disabilities Act, pursuant to 42 U.S.C. § 12133 and 12205;

6.4    That this Court award Plaintiffs compensatory monetary damages pursuant to Title II of the ADA for Defendants' intentional discrimination;

6.5    That this Court award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133,  42 U.S.C. § 12205, and RCW 49.60.030(2); and

6.6    That this Court award such additional or alternative relief as may be just, proper and equitable.

Dated this 15th day of October, 2018.

COMPLAINT - 25

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134

**WASHINGTON CIVIL & DISABILITY ADVOCATE**

By  /s/Conrad Reynoldson
Conrad Reynoldson, WSBA No. 48187
WASHINGTON CIVIL & DISABILITY ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
Email: conrad@wacda.com
Phone: (206) 855-3134
**Co-Counsel for Plaintiffs**

**CONNOR & SARGENT PLLC**

By  /s/ Stephen Connor
Stephen P. Connor, WSBA No. 14305
CONNOR & SARGENT PLLC
1000 Second Avenue, Suite 3670
Seattle, WA  98104
Email: steve@cslawfirm.net
Phone: 206-654-5050
**Co-Counsel for Plaintiffs**

**CONNOR & SARGENT PLLC**

By  /s/ Anne-Marie Sargent
Anne Marie E. Sargent, WSBA No. 27160
CONNOR & SARGENT PLLC
1000 Second Avenue, Suite 3670
Seattle, WA  98104
Email: aes@cslawfirm.net
Phone: 206-654-4011
**Co-Counsel for Plaintiffs**

COMPLAINT - 26

Conrad A. Reynoldson
WASHINGTON CIVIL & DISABILITY
ADVOCATE
3513 NE 45th Street, Suite G
Seattle, WA 98105
(206) 855-3134