The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CLARK LANDIS, ROBERT BARKER, GRADY THOMPSON, and KAYLA BROWN,<br><br>    Plaintiffs,<br><br>    v.<br><br>WASHINGTON STATE MAJOR LEAGUE BASEBALL STADIUM PUBLIC FACILITIES DISTRICT; and BASEBALL OF SEATTLE, INC., a duly licensed Washington corporation, d.b.a. Mariners Baseball, LLC, a duly licensed Washington limited liability company, d.b.a. The Baseball Club of Seattle, LLLP, a duly licensed Washington limited liability limited partnership,<br><br>    Defendants. | NO.    2:18-cv-01512-BJR<br><br>**DECLARATION OF FRED RIVERA IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>NOTE ON MOTION CALENDAR: June 14, 2019 |

I, FRED RIVERA, declare as follows:

1.      I am the Executive Vice President & General Counsel for the Seattle Mariners. I am competent to testify and make this declaration based on personal knowledge.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

2.      T-Mobile Park (the "Stadium") is one of the premier baseball venues in the country and the Mariners are committed to maintaining this status, which includes ensuring that the Stadium is accessible and compliant with applicable ADA Standards.[1]

3.      This is an ongoing process, which includes maintenance, regular inspection by both Club employees and third-parties, responding to guest comments and complaints, and planning for the future.

4.      An example of the Mariners' attention and responsiveness to guest comments and complaints is the team's prior interaction with Conrad Reynoldson, who is one of Plaintiffs' counsel.  In late 2015, Mr. Reynoldson raised a number of accessibility concerns regarding the Stadium and the Mariners fruitfully resolved those concerns without litigation.

5.      Accordingly, over the course of the past two years, the Mariners have undertaken a wide-range of ADA accessibility improvements to address issues raised by Mr. Reynoldson.  These include improvements in the following areas: (a) ticketing policies, practices and procedures for accessible seating; (b) modified dimensions for some wheelchair seating locations; (c) general accessibility in suites; (d) slope mitigation in common areas and ramp corridors; (e) restrooms; and (f) parking.  These improvements alone have incurred costs in excess of $2.3 million.

6.      Separately, on July 17, 2018, Mr. Reynoldson sent the Mariners a demand letter asserting a new set of ADA claims.  Attached hereto as **__Exhibit 1__** is a true and correct copy of Mr. Reynoldson's July 17 letter.  Mr. Reynoldson asserted that he would file a lawsuit within thirty days if the Mariners did not agree to meet and resolve the asserted claims.

7.      I responded to Mr. Reynoldson's letter and requested additional information and, as with previous interactions with Mr. Reynoldson, indicated interest in resolution without litigation.  Mr. Reynoldson then sent a second letter on August 17, and I responded to Mr.

---

[1] The Mariners do not own the Stadium and were not involved in its design or construction.  The Mariners lease the Stadium from the Washington State Major League Stadium Public Facilities District (the "PFD"), which is an entity created by King County, in an agreement with the Washington State Legislature, to own the Stadium.

DECLARATION OF FRED RIVERA - 2
(No. 2:18-cv-01512-BJR)

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1  Reynoldson's second letter with a letter dated August 31, 2018.  Attached hereto as **Exhibit 2**

2  is a true and correct copy of my August 31 letter.

3      8.    In my August 31 letter, I addressed the nine issues identified by Mr. Reynoldson

4  in his demand letter.  I explained that the Mariners were already taking steps to improve

5  distribution of accessible seating, to enable independent operation of the lift at Edgar's Cantina,

6  to eliminate any hazardous changes in level or expansion joints through planned maintenance

7  of the 19-year old Stadium, and to address any counter-height and line-width issues at the

8  concessions in the Pen.  I also explained that we needed time to investigate the claims that

9  drink rails on the 200 level were too high and that accessible seats on the 300 level and in

10  sections 180 and 181 lacked sufficient depth.  Finally, I advised Mr. Reynoldson that the

11  Mariners believed that accessible seating sightlines at the 100 and 200 levels complied with the

12  ADA.

13      9.    Mr. Reynoldson and I exchanged further correspondence, during which I

14  reiterated that the Mariners were investigating and reviewing the drink rail, seat depth, and

15  sight line claims, but needed time to do so.  Additional time was needed because, for among

16  other reasons, we were in the midst of the regular season with a heavy day-to-day workload,

17  and we were also in the middle of extensive lease renewal negotiations with the Stadium

18  owner, the PFD.

19      10.    Despite the Mariners having committed to address or investigate all of the

20  asserted claims, Mr. Reynoldson sent the Mariners a twenty-five page draft complaint on

21  September 21, 2018.  The draft complaint alleged the same claims that the Mariners had

22  already agreed to fix or investigate.  By his transmittal email, Mr. Reynoldson requested that

23  the Mariners "enter into a written settlement similar in form to the previous one[.]"  Mr.

24  Reynoldson asserted that "[t]his will ensure that we are able to resolve access issues at the

25  stadium once and for all."

26      11.    By email dated September 28, 2018, I responded to Mr. Reynoldson's email and

27  draft complaint.  I observed that preparing a draft complaint "was unnecessary to resolve the

DECLARATION OF FRED RIVERA - 3
(No. 2:18-cv-01512-BJR)

issues in your letter." I also stated that the Mariners were still "working on the three remaining issues" and are "100% committed to complying with applicable accessibility requirements." I also noted that the Mariners had "previously offered to pay [Mr. Reynoldson's] reasonable costs relating to identifying the issues in [his] original letter, and renew that offer."

12. In response, Mr. Reynoldson demanded that the Mariners agree to a settlement or he would file his complaint. On October 5, 2018, I sent a further letter to Mr. Reynoldson, in which I (a) reiterated the Mariners' commitment to ensuring the Stadium is accessible; (b) noted that this was demonstrated by the team's prior engagement with Mr. Reynoldson and the settlement agreement reached and issues resolved; (c) pointed out the bulk of the issues raised by his initial July letter had already been resolved; and (d) confirmed the Mariners' commitment to working on the few remaining issues and offered to involve Mr. Reynoldson and his clients. I also communicated the Mariners' understanding and belief that the new issues Mr. Reynoldson had raised should have been addressed through the review/resolution process provided for in the prior settlement agreement. A true and correct copy of my October 5 letter is attached hereto as **Exhibit 3.**

13. Mr. Reynoldson and I then exchanged further email. On October 16, 2018, I sent Mr. Reynoldson an email in which I explained that the Mariners were in the middle of capital planning (which included addressing some of the issues he had identified and was part of the lease extension negotiation process) and that I would be happy to set up a meeting with him to discuss the planning aspects related to accessibility. Unbeknownst to the Mariners, Mr. Reynoldson had already filed the Complaint to initiate this lawsuit the day before.

14. A prime example of the Mariners' planning for the future is its long-term planning regarding potential and necessary capital improvements. In 2015, the Mariners and the PFD, the governmental entity that owns the Stadium, engaged a team of consultants to investigate and identify the extent, cost and timing of potential capital improvements that could reasonably be anticipated for the Stadium through 2036. The result of this work is a comprehensive Long-Term Capital Needs Assessment (the "LTCNA"). This assessment of

DECLARATION OF FRED RIVERA - 4
(No. 2:18-cv-01512-BJR)

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

nearly 200 pages is central to informing how the Mariners plan for and budget for improvements and potential modifications to the Stadium.  The LTCNA provides for investment in all aspects of the Stadium, including architectural, the retractable roof, the garage, spectator requirements, major building systems, technology and infrastructure.[2]

15.    In December 2018, the Mariners entered into a new 25-year lease for the Stadium.  Among other things, the Mariners are required to operate, maintain, repair, re-equip and improve the Stadium in a first class manner, as measured against the operation, maintenance, repair, re-equipping and improvement of the top one-third of all Major League Baseball ballparks, taken as a whole.  This obligation is consistent with the Mariners' continuing commitment to a first-class Stadium in all respects and the LTCNA is a concrete example of the planning to accomplish this.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed this 10th day of June, 2019 at Seattle, Washington.

_____
Fred Rivera

---

[2] The Long-Term Capital Needs Assessment is publicly-available through a URL posted on the PFD's website: *see* http://douglas-sma.com/wp-content/uploads/2018/05/Safeco_LTCNA_Revised_Draft_III.pdf.  A 2018 update to the LTCNA is available here: http://www.ballpark.org/pdfs/2018%20Update%20to%20the%20LTCNA.pdf. *See also* Declaration of Trevor Gooby at Ex. A.

DECLARATION OF FRED RIVERA - 5
(No. 2:18-cv-01512-BJR)

# EXHIBIT 1

**WASHINGTON CIVIL & DISABILITY ADVOCATE**
3513 NE 45TH STREET
SUITE G
SEATTLE, WASHINGTON 98105
PHONE: (206) 855-3134          EMAIL: Conrad@wacda.com

July 17, 2018                                    **VIA CERTIFIED MAIL**

Fred Rivera
Executive Vice President and General Counsel
Seattle Mariners
Safeco Field
1250 First Avenue South
Seattle, WA 98134

RECEIVED
JUL 1 8 2018

***RE: ADA Letter***

Dear Mr. Rivera:

Our 501(c)(3) nonprofit disability rights organization along with Steve Connor and Anne-Marie
Sargent of Connor & Sargent PLLC represent several individuals with mobility disabilities who
use both powerchairs and manual wheelchairs. Our clients are longtime Mariners baseball fans
who have encountered serious accessibility issues at Safeco Field that significantly impact their
ability to comfortably enjoy baseball games without harm.

The issue in this matter is noncompliance with the Americans with Disabilities Act (ADA). The
stadium has a number of violations of the requirements contained in the ADA which pose both
safety and accessibility barriers for our clients as well as other non-ambulatory spectators. The
law does not require notice in advance of filing a lawsuit; however, we do not wish to sue the
Seattle Mariners unless it is necessary to reach compliance with the law. The accessibility
allegations that our clients have hired us to address are as follows:

- Insufficient vertical distribution of accessible seating
- Insufficient accessible seating sightlines (100 and 200 levels)
- Insufficient accessible seating depth (300 level and sections 180 and 181)
- Edgar's Cantina LU/LA Elevator is not independently operable
- The 100 level common areas have potentially hazardous changes in level
- Expansion joints throughout the stadium are potentially hazardous
- Multiple Pen concessions have excessive counter height
- Multiple Pen concessions have insufficient line widths
- Terrace Club window drink rails have excessive height

Thus, we write to demand that the Seattle Mariners agree in writing to comply with the ADA,
specifically as it relates to the legal requirements that apply to our clients.

If the Seattle Mariners fails to deliver a response agreeing to meet and set a meeting as requested
within thirty (30) days of the date of this letter, our clients will file a lawsuit and an injunction

that will require the Seattle Mariners to comply with the ADA's accessibility regulations and pay our clients' legal fees and costs.

The Seattle Mariners have thirty (30) days from the date of this letter to agree to meet and set a meeting date. We anticipate that this meeting will allow the parties to amicably resolve this matter.

To accept our meeting request, please contact Conrad Reynoldson by phone at (206) 855-3134 or by email or Conrad@wacda.com.

Sincerely,

WASHINGTON CIVIL & DISABILITY ADVOCATE

cc:     Anne-Marie E. Sargent, Esq.

# EXHIBIT 2



August 31, 2018

Conrad Reynoldson
Washington Civil & Disability Advocate
3513 NE 45th Street
Suite G
Seattle, Washington 98105

      Re:    ADA Letter

Dear Conrad:

We again thank you for bringing these issues to our attention.  In your letter dated August 17, 2018, you requested additional information about our specific initial positions on the issues identified in your letter.  We already were aware of and have plans to address most of them, and are happy to provide you with the following information.  As we all know, this is the second time in the last three years you have raised ADA issues with us, with the last time resulting in what we were led to believe was a comprehensive settlement.

- First bullet point – insufficient vertical distribution of vertical seating. Over a year ago, we engaged architects to develop a design to modify part of the lower seating bowl to increase accessible seating closer to the field. We currently are planning to begin construction of this new design in the offseason.
- Second bullet point – insufficient accessible seating sightlines (100 and 200 levels).  It is our understanding that the sightlines are in compliance with the applicable standard when the ballpark was constructed.
- Third bullet point – insufficient accessible seating depth (300 level and sections 180 and 181).  This issue requires further review on our part.
- Fourth bullet point – Edgar's Cantina LU/LA – is not independently operable.  We agree that the LU/LA should be independently operable and will correct this.
- Fifth bullet point – changes in level.  These changes are the result of normal wear and tear.  We already have identified in our capital projects plan various areas to correct.  We will be sure to carefully survey the ballpark to make sure all problematic areas are included in our plan.



Conrad Reynoldson
August 31, 2018
Page 2

- Sixth bullet point – expansion joints.  These expansion joint gaps are the result of normal wear and tear.  We already have identified in our capital projects plan various expansion joints to correct.  We will be sure to carefully survey the ballpark to make sure all problematic joints are included in our plan.
- Seventh bullet point – Multiple Pen concessions have excessive counter height.  We agree and have already made plans to correct this during the offseason.
- Eighth bullet point – Multiple Pen concessions have insufficient line widths.  We agree and have already made plans to correct this during the offseason.
- Ninth bullet point – Terrace Club window drinks rails have excessive height.  We will need more time to evaluate this claim.

We are sure you are just trying to be good citizens by bringing these issues to our attention.  After review of our FanCare emails and Guest Experience complaints, however, we note that we have not heard a single complaint about any of the issues raised in your letter.  We are proud of the accessibility of our ballpark and our commitment to all of our fans, including our fans with disabilities.  We are equally proud of how we quickly address issues brought to our attention.

As stated in our letter dated August 16, 2018, we will handle all further investigation of these matters.  We hereby renew our request for an accounting of the costs and fees you have incurred in this matter to date so we can consider reasonable reimbursement for your efforts.

We remain willing to meet with you.

Sincerely,

Fred Rivera
EVP & General Counsel, Seattle Mariners

Cc:   Anne-Marie E. Sargent
      Stephen Connor
      Jonathan Ko

# EXHIBIT 3



**FRED RIVERA**
EXECUTIVE VICE PRESIDENT & GENERAL COUNSEL
LEGAL & GOVERNMENTAL AFFAIRS
(206) 346-4154

<u>Via Email</u>

October 5, 2018

Conrad Reynoldson
Washington Civil & Disability Advocate
3513 NE 45th Street, Suite G
Seattle, Washington 98105

      Re:    ADA Letter

Dear Mr. Reynoldson:

This responds to your October 1, 2018 email repeating your threats to file a lawsuit alleging ADA violations at Safeco Field. While your statements to date indicate that you have always intended to bring this litigation as soon as possible to collect attorney's fees regardless of the Mariners' response to the substance of the ADA demands, we nonetheless want to explicitly set forth the principles we are applying in our discussions with you.

First, the Mariners are committed to ensuring the ballpark is accessible. We demonstrated that commitment with the agreement you negotiated and reached with us within the last year, in November 2017. There, you shared your accessibility concerns based largely on your own personal experiences at the ballpark, and we fruitfully resolved all or nearly all of those concerns, including with a complete release of liability and a process for you to raise concerns if the Mariners violated the settlement agreement. Even with respect to the nine issues raised in your July 18, 2018 letter, we believe we have already resolved all but two or three of those issues. Your experience proves that you simply need to notify us of issues to have them resolved rather than immediately resort to a confrontational litigation position and demand for attorney's fees. To reiterate my prior correspondence, there was no need for you to prepare a draft complaint or to incur any litigation expenses on behalf of your clients. A simple phone call or resort to the process in the existing settlement agreement would have given you and your clients the same result.



Conrad Reynoldson
October 5, 2018
Page 2


Second, we are committed to working on the few remaining issues and would like
to involve you and your clients in that resolution without your repeated litigation
threats.  I repeat the Mariners' appreciation for raising the issues included in your
July 18, 2018 letter, even though some of the allegations are duplicative of those
resolved in the aforementioned settlement.  We have agreed to remedy most of the
issues before the 2019 opening day; some of that work was already in our ballpark
maintenance plan even before we received your letter.   The other issues remain
under study, and we have a reasoned basis for asserting that you are wrong about
others that we'd like to share.   The Mariners will address these issues and your
clients will be able to review, but litigation will necessarily preclude your and your
clients' involvement, at least short of securing injunctive relief.  If there are some
issues on which we cannot agree, then let's identify those through discussion.

Finally, it is extremely disappointing that you are refusing to reciprocate the good
faith the Mariners have shown you over the last two years.  We have simply asked
for information about your clients.  You are threatening lawsuits and demanding
settlements, yet you will not provide basic facts supporting those demands other
than relying on the notice-pleading standard applicable in federal district courts.  It
is likewise disheartening that you have raised as new claims matters that were
fully settled and released earlier this year, and could have been addressed through
the settlement agreement process rather than threatening a new lawsuit in which
you demand yet more attorney fees.

Ultimately, it is your clients' decision on whether to file a lawsuit.  We are fully
prepared to defend such a lawsuit, including to aggressively contest any petition
for what will be unnecessarily-incurred fees and costs under these circumstances.

Sincerely,

Fred Rivera

Cc:    Anne-Marie E. Sargent
       Stephen Connor
       Jonathan Ko

1

## **CERTIFICATE OF SERVICE**

2        The undersigned hereby certifies that, on June 10, 2019, I electronically filed the

3   foregoing document with the Clerk of the Court using the CM/ECF system which will send

4   notification of such filing to all counsel of record.

5

6

7                                                                   Rondi A. Greer

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE
(No. 2:18-cv-01512-BJR)